UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROBERT BURGARD and TP ENTERPRISES, INC., A COLORADO CORPORATION; <br><br> Plaintiffs, <br><br> vs. <br><br> ALPHA PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Defendant. | 5:21-CV-05060-KES <br><br><br> MEMORANDUM OPINION AND ORDER |

**INTRODUCTION**

This matter is pending before the court on the amended complaint of Robert Burgard, a South Dakota resident, and TP Enterprises, Inc., a Colorado Corporation (collectively "plaintiffs"), against defendant Alpha Property and Casualty Insurance Company ("Alpha"), a Wisconsin corporation with its principal place of business in Texas. See Docket Nos. 4 & 11. Plaintiffs premise jurisdiction for their complaint on the presence of diverse citizenship among the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332.

Alpha now moves the court pursuant to 28 U.S.C. § 1404(a) to transfer venue of this action to the District of Colorado. See Docket No. 13. Plaintiffs resist this motion. See Docket No. 16. This motion was referred to this magistrate judge for a determination pursuant to 28 U.S.C. § 636(b)(1)(A) and

the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

## FACTS

This action was only filed a few months ago.  The parties have not held their Rule 26 scheduling conference and no scheduling order has been issued by the district judge.  Alpha's motion was filed the same date that it filed its answer, November 24, 2021, so it is presumed little to no discovery has taken place.  Accordingly, the facts discussed herein are taken primarily from the parties' pleadings including the complaint, answer, and the instant motion.  Such facts, of course, are subject to revision if subsequent discovery indicates revision is in order.

On November 9, 2015, Mr. Burgard was working in Denver, Colorado, on a jobsite for his employer, Tharaldson Hospitality Development, LLC ("Tharaldson"), a California Foreign Limited-Liability Company which develops hotel properties across the United States.  Docket No. 4 at p. 2, ¶ 5; See https://www.bizapedia.com/ca/tharaldson-hospitality-development-llc.html, last checked Jan. 24, 2022.  The registered agent for Tharaldson is in Fargo, North Dakota.  Id.  While Mr. Burgard was acting within the course and scope of his employment, Carlos Morales injured Mr. Burgard with a 2013 Genie forklift Mr. Morales was operating.  Id. at ¶ 7.  Mr. Morales was also acting within the course and scope of his employment at the time for his employer, TP Enterprises, Inc., one of Tharaldson's subcontractors on the work site.  Id. at ¶ 6; Docket No. 14 at pp. 2-3.

At the time of the accident, Mr. Morales was a resident of Colorado. Docket No. 14 at p. 2.  Although Mr. Burgard is now a resident of South Dakota, it is unknown if he was a resident of South Dakota at the time of the accident.

The forklift was owned by United Rentals (located in Colorado), was licensed in the state of Colorado, and was leased by Tharaldson for use on the job site.  Docket No. 4 at p. 2, ¶ 8.  Alpha had previously issued a contract of insurance to TP Enterprises that covered up to $1 million in liability for TP Enterprises and its employees.  Id. at p. 3, ¶¶ 10, 11.

Mr. Burgard sued Mr. Morales and TP Enterprises in the United States District Court for the District of Colorado.  Docket No. 14 at p. 3; See Burgard v. Morales, et al., 1:17-cv-02537-WJM-SKC (D. Colo. 2017).  While that action was pending, Mr. Burgard's counsel sent a letter to Alpha at a Dallas, Texas, address seeking coverage under Alpha's insurance policy to TP Enterprises. Docket No. 15-2.

Kemper Insurance Company ("Kemper"), on behalf of Alpha, issued a letter to TP Enterprises from an address in Clinton, Iowa, notifying TP Enterprises that Alpha would not be paying any claim for Mr. Morales' or TP Enterprises' liability.  Docket No. 15-3.  Kemper's letter was signed by its agent, Amber Clay, who presumably lives in Iowa.  Docket No. 15-3.

Kemper, on behalf of Alpha, listed three reasons for the denial:  (1) TP Enterprises was late in reporting the claim, (2) Mr. Morales was not a listed driver on TP Enterprises' commercial auto policy, and (3) the forklift involved in

3

the injury was not a listed vehicle on TP Enterprises' commercial auto policy.  Id.

Counsel for Mr. Burgard responded to the denial of claim letter by writing to Ms. Clay at the address in Iowa.  Docket No. 15-4.[1]  Kemper, again on behalf of Alpha, responded with a letter from its Senior Litigation Specialist, Helen Claire Quarles.  Docket No. 15-5.  The letterhead of the correspondence from Ms. Quarles bears a Chicago, Illinois, address for Kemper, but Ms. Quarles' signature block indicates she was located in Clinton, Iowa.  Compare Docket No. 15-5 at p. 1, with id. at p. 4.  Kendra Slagle, a resident of Birmingham, Alabama, and an employee of Kemper, supervises either Ms. Quarles, Ms. Clay, or both.  Docket No. 15 at p. 2.  Ms. Slagle states she supervises the "adjustor" who denied the claim.  Docket No. 15 at p. 2.  Presumably this is Ms. Clay, but it could possibly be Ms. Quarles or both of them.

Mr. Morales and TP Enterprises settled Mr. Burgard's claim against them on August 6, 2021, for (assertedly) less than the value of Mr. Burgard's claim.  Docket No. 4 at p. 5, ¶¶ 20-21.  As part of that settlement, TP Enterprises assigned to Mr. Burgard all rights, title, interest, claims, demands, and causes of action against Alpha, including any action for breach of contract and bad faith refusal to pay insurance benefits in relation to Mr. Burgard's injury and Alpha's insurance policy.  Id. at ¶ 23.

---

[1] It appears this letter was sent only via electronic email.  Docket No. 15-4.

On September 29, 2021, Mr. Burgard and TP Enterprises brought this action against Alpha in the District of South Dakota, alleging causes of action for bad faith refusal to pay insurance benefits, breach of contract, breach of fiduciary duty, unfair trade practices, and intentional infliction of emotional distress.  See Docket Nos. 1 & 4.

Alpha asserted in its answer that the policy of insurance it issued was a Colorado Commercial Vehicle Policy and its insured was TP Enterprises. Docket No. 11.  Alpha denies that the forklift used by Mr. Morales is covered under the terms of its policy.  Id. at p. 2, ¶ 8.

Alpha now seeks to change the venue of this action to the District of Colorado pursuant to 28 U.S.C. § 1404(a) citing the convenience of the parties and witnesses.  Docket No. 13.  Plaintiffs seek to have their case remain in the District of South Dakota.  Docket No. 16.

## DISCUSSION

### A.   If Venue Is Improper in South Dakota, 28 U.S.C. § 1406 Applies

Section 1404(a) of Title 28 provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

The first thing one notes about § 1404(a) is that it applies only when venue is proper in both the forum court and in the proposed transferee court, either by statute or by consent of the parties.  Id.  See also Turner v. Werner Enters., Inc., No. 8:09-cv-130, 2009 WL 2358348, at *1 (D. Neb. July 23, 2009)

5

(citing Eggleton v. Plasser & Theurer Export Van Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 588 n.3 (8th Cir. 2007); Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 430 (2007)). Therefore, in order for § 1404(a) to be applied in this case, venue must be proper in both the District of South Dakota and in the District of Colorado. Id. Plaintiffs do not consent to venue in Colorado.

Section 1391 of Title 28 dictates where venue is proper. See 28 U.S.C. § 1391(a). Section 1391 provides in pertinent part as follows:

> (b) **Venue in general.**—A civil action may be brought in—
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . .; or
> >
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.
>
> (c) **Residency.**—For all venue purposes—
> > * * *
> > (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business;

28 U.S.C. § 1391(b) and part of (c).

The District of South Dakota does not appear to be the district where Alpha resides. It is incorporated in Wisconsin and has its principal place of

business in Texas.  Docket No. 11 at pp. 1-2.  Alpha asserts it has no offices or employees in South Dakota.  Docket No. 14 at p. 6.  "Alpha Property and Casualty Insurance Company" is not listed as an insurance company that is licensed to do business in South Dakota.  See https://www.sircon.com/ComplianceExpress/Inquiry/consumerInquiry.do, accessed from the South Dakota Division of Insurance web site at https://dlr.sd.gov/insurance/license_inquiry_service.aspx, last checked Jan. 24, 2022.

Neither party addresses whether South Dakota has personal jurisdiction over Alpha, but it appears doubtful at this point based on the above skeletal facts.  Nor is South Dakota the district where a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b)(1) & (2). Subsection (b)(3) of § 1391 applies *only* in the event there is no other district in which an action may otherwise be brought.

Here, there clearly are districts in which venue would be proper under § 1391(b).  Venue would have been proper in the District of Colorado.  28 U.S.C. § 1391(b)(2).  Alpha issued its insurance policy in Colorado to a Colorado business.  The accident took place in Colorado.  Alpha's refusal to pay the claim for Mr. Burgard's injuries was communicated to the insured in Colorado.  The lawsuit for which Alpha refused to provide the defense occurred in Colorado.  The settlement by which Mr. Burgard obtained the right to bring this bad faith action on behalf of the insured arose out of the litigation in the

District of Colorado.  Hence, it appears venue is *not* proper in the District of South Dakota at all.

Venue would also have been proper in either a district court in Wisconsin, where Alpha is incorporated, or a district court in Texas, where Alpha has its principal place of business.  28 U.S.C. § 1391(b)(1). Because venue could be had in Texas or Wisconsin under § 1391(b)(1), or in Colorado under § 1391(b)(2), plaintiffs cannot premise venue on § 1391(b)(3).  Subsection (b)(3) applies *only* where venue cannot be established under (b)(1) or (b)(2).  28 U.S.C. § 1391(b)(3) (stating "***if*** there is no district in which an action may otherwise be brought as provided in this section . . .") (emphasis added).  See also Turner, 2009 WL 2358348, at *3 (citing Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996) (noting that § 1391(b)(3)'s "fallback provision" can only be applied where venue cannot be had in any district under subsections (b)(1) or (b)(2)).

With these principles in mind, Alpha's motion appears misplaced. Motions to transfer under 28 U.S.C. § 1404(a) can only be made where venue is proper in the forum court and transfer is sought to another district court where venue is also proper.  Sinochem Intern. Co. Ltd., 549 U.S. at 430; Eggleton, 495 F.3d at 588 n.3; Turner, 2009 WL 2358348, at *1.  Instead, the proper statute to address the situation where the case was venued improperly in the first instance is 28 U.S.C. § 1406.  Section 1406 provides in pertinent part:

> The district court of a district in which is filed a case laying venue
> in the wrong division or [wrong] district shall dismiss, or if it be in

8

the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

The decision whether to dismiss an action or transfer it under § 1406(a) is based on "the interest of justice." Turner, 2009 WL 2358348, at *2 (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962). Generally, transfer to remove a procedural obstacle such as improper venue is favored rather than dismissing the action. Id. Here, the court determines that transfer of the action is preferrable to dismissal. Both parties concede that the District of Colorado was a district where this action could have been brought. There is both subject matter jurisdiction as well as personal jurisdiction over the parties in that court. Accordingly, if venue in the District of South Dakota is improper, and if transfer must be evaluated under § 1406(a), the court will transfer this action to the District of Colorado rather than dismiss it outright.

**B.    Analysis of Transfer Under § 1404(a)**

The court is hampered by a lack of briefing from the parties as to whether venue is proper in the District of South Dakota and, therefore, whether transfer should be considered under § 1406(a). They address only transfer under § 1404(a) and assume that venue is proper in this court. Accordingly, in order to provide a complete record for any reviewing court, this court will assume venue is proper here because it is a place where Alpha could be subject to personal jurisdiction (see § 1391(b)(1) & (c)) and will proceed to analyze transfer under § 1404(a).

The Eighth Circuit has directed that any "case-specific factors" relevant to convenience and fairness should be considered to determine whether transfer is warranted.  In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  In considering whether "the interests of justice" are promoted by transfer, the court may consider factors such as "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 696 (8th Cir. 1997) (citation omitted).  "Merely shifting the inconvenience from one side to the other, . . ., obviously is not a permissible justification for a change of venue." Id. at 696-97 (quoting Scheidt v. Klein, 956 F.2d 693, 966 (10th Cir. 1992)).  Absent a forum selection clause, the burden is on the party seeking transfer to show that transfer is warranted under the facts of the case.  Terra Int'l, Inc., 119 F.3d at 695.

**1.    Judicial Economy**

This factor favors transferring this matter to the District of Colorado. That court is already familiar with the underlying facts, the case between Mr. Burgard and Mr. Morales/TP Enterprises having been litigated there.  Also, this case is in its nascent stages in this district with no discovery, scheduling or substantive motions practice having taken place.  It will not be a waste of

judicial resources to transfer this case because neither the parties nor this court have invested substantial time and resources into this case as of yet.

### 2.    Plaintiff's Choice of Forum

A plaintiff's choice of venue is to be given weight.  <u>Terra Int'l Inc.</u>, 119 F.3d at 695.  But that deference is only paid to the plaintiff's choice based on the assumption that the chosen forum is a convenient one.  <u>In re Apple, Inc.</u>, 602 F.3d at 913.  Where the forum is not convenient for anyone but the plaintiff (and here it is convenient for only *one* of the plaintiffs), the choice of forum does nothing more than shift the burden to the moving party to show grounds in support of transferring the case elsewhere.  <u>Id.</u>

In the <u>In re Apple, Inc.</u> case, the Eighth Circuit held the district court committed a serious error and granted a writ of mandamus requiring the transfer of the case from Arkansas to California where the only connection with Arkansas was the fact that plaintiff's lawyers were located there and plaintiff had shipped a number of documents to its lawyer's offices.  <u>In re Apple, Inc.</u>, 602 F.3d at 911, 913-15.

In this case it appears venue may be improper in the District of South Dakota.  Additionally, South Dakota is convenient for Mr. Burgard, but not for the other plaintiff, TP Enterprises.  Finally, it appears as though Mr. Burgard may have been living in Colorado at the time of the events giving rise to his injury.  If that is true, South Dakota's main point of contact with this litigation is simply the fact that plaintiff's lawyers are located here and one plaintiff, Mr. Burgard, has relocated to South Dakota.  Given these facts, the court

11

considers plaintiff's choice of forum and pays it deference, but gives less weight to it than would ordinarily be the case because the presumption that plaintiff has chosen a convenient forum is not supported by the record.  Id.

### 3. Comparative Costs to the Parties of Litigating in Each Forum

Both Alpha and Mr. Burgard will incur some additional cost to litigate in Colorado where neither of them are citizens or reside.  However, TP Enterprises is also a named plaintiff herein and it will be less expensive for TP Enterprises to litigate in Colorado, its home state, than in South Dakota.

### 4. Each Party's Ability to Enforce a Judgment

This factor does not appear to be an issue.  Alpha is not seeking a judgment against the plaintiffs and presumably plaintiffs are not worried about enforcing a judgment against Alpha no matter in which court that judgment is rendered.

### 5. Obstacles to a Fair Trial

Here, one of the issues is whether various witnesses are subject to subpoena by the court in which the trial will be had.  Generally, the subpoena power of a federal court extends within its district and for a 100-mile radius around the situs of the court.  FED. R. CIV. P. 45(c)(1)(A).

In a bad faith action, the focus is on the defendant and its agents and whether they denied an insurance claim knowing or having good reason to know the claim was actually covered by the policy.  Goodson v. Am. Standard Ins. Co. of Wisc., 89 P.3d 409, 414 (Colo. 2004) (en banc).  Thus, many, if not most, of the witnesses in this case will be employees and agents of Alpha.  So

far, the court is aware that those witnesses are in Alabama, Texas, Illinois, and Clinton, Iowa (located in the far southeastern corner of Iowa).  None of those locations are within 100 miles of Rapid City, South Dakota (the venue of this case presently), or Denver, Colorado (the place Alpha wishes to have the case transferred to).

Under similar facts, the Eighth Circuit found a district court committed a "serious error" in failing to transfer a case from Arkansas to California where the plaintiff alleged the defendant's business practices had caused plaintiff harm and where the decisions about which plaintiff complained originated in California, the defendant's residence.  In re Apple, Inc., 602 F.3d at 911, 913-15.  The In re Apple court took the extraordinary step of reversing the district court's § 1404(a) finding by granting a writ of mandamus.  Id. at 915.

Other witnesses whose testimony may be necessary are the insurance agent who sold TP Enterprises the Alpha policy—this agent is located in Colorado—and the party who bought the policy—TP Enterprises—also located in Colorado.  Plaintiffs are correct that a court typically will decide the contract claim as a matter of law without any extrinsic evidence, but if the court finds an ambiguity in the terms of the policy, parol evidence from TP Enterprises and the Colorado agent who sold the policy may be necessary.

Finally, if any decision with regard to plaintiffs' claims requires examining the forklift itself, that is also located in Colorado.  The company that leased the forklift is also in Colorado.

13

Business and insurance records these days are largely electronic, thus making the location of those documents far less important.  In re Apple, Inc., 602 F.3d at 914.  But it is noteworthy that neither Alpha's nor TP Enterprises' records are stored in South Dakota.  There may be some relevant records at the Colorado insurance agent's office.  Should it become necessary to examine the original documents, the location of those documents outside of South Dakota and partially in Colorado weighs slightly in favor of transfer.  Overall, this factor favors transfer to Colorado.

### 6.    Conflict of Law Issues

There is no question Colorado law will apply to determine the claims in this case.  This court must apply the conflict of laws rules of the forum state, that is, South Dakota.  Bacon v. Liberty Mut. Ins. Co., 575 F.3d 781, 785 (8th Cir. 2009).  South Dakota's conflict of laws rules for contracts provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  SDCL § 53-1-4.  An insurance contract is "made" when the last act necessary to its completion— delivery of the policy—takes place.  Great West Cas. Co. v. Hovaldt, 603 N.W.2d 198, 201 (S.D. 1999).  Here, the policy issued by Alpha was delivered to TP Enterprises in Colorado so, under South Dakota's conflicts of laws rules, Colorado law applies to the interpretation of the insurance contract.  Id. Colorado is also the place of performance for that contract, which again points to the application of Colorado law to the insurance policy.

14

South Dakota's conflict of laws rules for torts, like the tort of bad faith failure to pay insurance benefits, applies the most-significant-relationship approach to determine the applicable law.  <u>Chambers v. Dakotah Charter Bus, Inc.</u>, 488 N.W.2d 63, 67 (S.D. 1992).  Under that approach, the applicable law is the law of the state having the most significant contacts to the occurrence and the parties considering where the injury occurred, where the conduct causing the injury occurred, the domicile of each of the parties, and the place where the relationship of the parties is centered.  <u>Id.</u> at 68.  Here, Colorado has the most significant contacts under <u>Chambers</u>.

The contract of insurance between TP Enterprises and Alpha was entered into in Colorado.  The policy is governed by Colorado law.  The accident occurred in Colorado.  Alpha's denial of coverage was communicated in Colorado to its insured, TP Enterprises, who was also in Colorado.  The lawsuit which Alpha allegedly refused in bad faith to defend or to pay to settle was pending in the District of Colorado.  If Alpha engaged in unfair trade practices, those practices would be measured against Colorado's trade laws, not South Dakota's—Alpha engaged in no trade activities in South Dakota in connection with the events in this case.  South Dakota law has no claim to application to any of the claims in this case, tort or contract, and both parties tacitly acknowledge this.

In a case somewhat the obverse of this one (obverse because it was the insurance company asserting bad behavior on the part of its insured), an insurance company based in Iowa brought a declaratory judgment action in

15

federal district court in Iowa seeking a determination that it was justified in rescinding a policy of life insurance issued to a Texas man on the grounds that the Texan had materially misrepresented facts regarding his medical conditions on his life insurance application. Aviva Life & Annuity Co. v. Goldstein, 722 F. Supp. 2d 1067, 1070 (S.D. Iowa 2010).  The Texan moved to transfer the case pursuant to § 1404(a) to a Texas district court.  Id.  The court granted the motion, noting that the fraudulent behavior, if it occurred, happened in Texas; the defendant's physicians were in Texas; the company's insurance agent was in Texas; the insurance company was licensed and governed by the Texas Department of Insurance; and the policy was issued in Texas.  Id. at 1077-79.

Similarly, when a Missouri salon company with beauty salons in Florida brought suit in the Eastern District of Missouri (where it was domiciled) for its insurer's alleged bad faith failure to pay business interruption insurance benefits when salons were shuttered in Florida due to COVID-19, the court granted the request to transfer the case to the Middle District of Florida. Gateway Clippers Holdings, LLC v. Main Street Am. Prot. Ins. Co., No. 4:20-CV-1541-JMD, 2021 WL 4168202, at *8 (E.D. Mo. Sept. 14, 2021).  The court noted that not only was Florida the defendant's residence, but nearly every action connected with the case occurred in Florida: the salons insured by the policy were in Florida, the orders to close the salons were issued in Florida, and the loss of income from the closures occurred in Florida.  Id.  Furthermore, the defendant operated under the Florida department of insurance regulation and the policy was governed by Florida law.  Id.

16

**7.      Advantages of Having a Local Court Determine Questions of Local Law**

The district court is fully capable of determining Colorado law, applying that law to the (all-but) inevitable summary judgment motion, and instructing a jury on Colorado law.  However, there is a clear recognition that it is preferable to have a local court which is more familiar with local law determining issues of local law.  Here, the District of Colorado can be expected to be much more familiar with Colorado law than this court is.  This factor heavily favors transferring this matter to the District of Colorado.

Whether the forum state will be applying local law is a weighty factor. For example, in a District of North Dakota case, a plaintiff which had its principal place of business in North Dakota brought suit against its property insurer in the District of North Dakota alleging breach of contract and bad faith refusal to pay insurance benefits.  R.D. Offutt Co. v. Lexington Ins. Co., 342 F. Supp. 2d 838, 840 (D.N.D. 2004).  The real property which was covered by the insurance policy was in Oregon, and the insurance company had its domicile in Delaware, although the insurance policy also covered property in seven other states.  Id.

The insurance company sought to have the matter transferred to the District of Oregon because most of the witnesses were located there.  Id.  The district court denied the motion, noting that the policy of insurance was negotiated in North Dakota, issued in North Dakota, was governed by North Dakota law, premiums were paid from North Dakota, and defendant was governed by the North Dakota department of insurance.  Id. at 841-45.

17

Here, as indicated above, Colorado law applies.  Alpha is not governed by the South Dakota Division of Insurance.  The policy was not issued in South Dakota nor is it governed by South Dakota law.  The premiums were not paid from South Dakota and the policy was neither negotiated nor purchased in South Dakota.  All of those actions occurred in Colorado.  Giving consideration to all the case-related factors associated with this matter, the court concludes it is in the interests of justice to transfer this matter to the District of Colorado.

## CONCLUSION

Based on the foregoing facts, law and analysis, it is

ORDERED that Alpha's motion to transfer this matter to the District of Colorado [Docket No. 13] is GRANTED.  If neither party objects after 14 days in accordance with the below Notice to Parties (or a longer time if the district court grants extensions of time to file objections), the clerks are directed to transfer this case to the District of Colorado.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in

18

order to require review by the district court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED this 24th day of January, 2022.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge