UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROBERT BURGARD and TP ENTERPRISES, INC., A Colorado Corporation;<br><br>　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>ALPHA PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>　　　　　　　　　　Defendant. | 5:21-CV-05060-KES<br><br><br>ORDER REVERSING IN PART AND AFFIRMING IN PART ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE |

　　　　Plaintiffs, Robert Burgard and TP Enterprises, filed this action against Alpha Property and Casualty Insurance Company alleging breach of contract, bad faith, breach of fiduciary duty, unfair trade practices, and intentional infliction of emotional distress. Docket 4 at 6-9. Alpha moves under 28 U.S.C. § 1404(a) to transfer venue to the District of Colorado. Docket 13. Burgard opposes the motion. Docket 16. The court referred the motion to transfer venue to Magistrate Judge Veronica Duffy for ruling. Docket 21.

　　　　The magistrate judge issued a memorandum opinion and order granting Alpha's motion to transfer venue to the District of Colorado. Docket 22 at 18. Burgard filed objections to the magistrate judge's order. Docket 23. Alpha did not file any objections to the magistrate judge's order but requested that the

court reject Burgard's objections and enter an order granting transfer to the District of Colorado. Docket 25.

## FACTUAL BACKGROUND

This case arises out of a workplace injury Burgard experienced in Denver, Colorado. Docket 4 ¶¶ 5, 7. Burgard is a citizen of South Dakota who resides in Pennington County. *Id.* ¶ 1. TP Enterprises, Inc., is incorporated in Colorado with its principal place of business in Colorado. *Id.* ¶ 2. Alpha is incorporated in the state of Wisconsin with its principal place of business in Texas. Docket 11 ¶ 4.

On November 9, 2015, Burgard and Carlos Morales were working on a jobsite in Denver, Colorado. Docket 4 ¶¶ 5, 6. Burgard was employed as the foreman for Tharaldson Hospitality Development, L.L.C. and was acting within the course and scope of his employment. *Id.* ¶ 5. While Morales was operating a 2013 Genie forklift that day, he "ran into and over and through" Burgard. *Id.* ¶¶ 5, 7. This accident caused Burgard's leg to be severed. *Id.* ¶ 7. Morales, a Colorado resident, was also acting within the course and scope of his employment at the time for his employer, TP Enterprises, Inc., a subcontractor on the work site. *Id.* ¶ 6; Docket 14 at 2. At the time of the injury, the forklift was licensed in the State of Colorado, insured by Alpha, and owned by United Rentals, which is located in Colorado. Docket 4 ¶ 8.

On October 24, 2017, Burgard sued Morales and TP Enterprises in the United States District Court for the District of Colorado. Docket 14 at 3. On May 20, 2019, while the action in Colorado was still pending, Burgard's

counsel sent a letter to Alpha at a Dallas, Texas, address seeking coverage under TP Enterprises' insurance policy with Alpha. Docket 15-2. Kemper Insurance Company,[1] on behalf of Alpha, issued a letter to TP Enterprises from an address in Clinton, Iowa, notifying TP Enterprises that Alpha agreed to handle the claim under a reservation of rights and notified TP Enterprises that the claim may not be covered under the insurance policy. Docket 15-3. Kemper's reservation of rights letter was signed by its agent, Amber Clay, who presumably lives in Iowa. *Id.*

Burgard's counsel responded to the reservation of rights letter by writing to Clay via email. Docket 15-4. On October 16, 2019, Kemper, on behalf of Alpha, responded and concluded that there was no coverage for Burgard's injuries under the commercial auto policy. Docket 15-5. The letter was signed by Senior Litigation Specialist, Helen Claire Quarles. *Id.* Quarles' signature block indicates she also is from Clinton, Iowa, however the footer bears a Chicago, Illinois, address for Kemper Corporation. *Id.* at 1, 4. Additionally, Kendra Slagle, the Director of Claims for Kemper, stated in an affidavit that she was familiar with the Colorado policy and supervised the Kemper adjustor who denied the claim. Docket 15 ¶¶ 1, 3, 4. Slagle presumably resides in Birmingham, Alabama. *Id.* at 2.

On August 6, 2021, Burgard settled his claims with Morales and TP Enterprises, Inc. Docket 4 ¶ 20. As part of the settlement, TP Enterprises

---

[1] Burgard initially also named Kemper Insurance Company as a defendant. Docket 1. But Burgard's amended complaint names only Alpha as a defendant. Docket 4.

"assigned to Mr. Burgard all rights, title, interest, claims, and demands in and through certain causes of action, including any action for breach of contract and bad faith refusal defend and indemnify TP Enterprises, Inc., for Mr. Burgard's injury in relation to the forklift[.]" *Id.* ¶ 23; *see* Docket 24-3.

After settling, Burgard and TP Enterprises initiated this lawsuit against Alpha in the District of South Dakota on September 29, 2021. *See* Docket 1. Burgard alleges separate causes of action for breach of contract, bad faith, breach of fiduciary duty, unfair trade practices, and intentional infliction of emotional distress. Docket 4 ¶¶ 24-40. Burgard also seeks punitive damages under Colorado's punitive damage statute, C.R.S.A. § 13-21-102. *Id.* ¶ 48-50. Alpha now moves to transfer venue to the District of Colorado. Docket 13. Burgard opposes the motion. Docket 16.

## DISCUSSION

I.  **Burgard's Appeal from the Magistrate Judge's Order Granting Alpha's Motion to Transfer Venue**

   A.  **Legal Standard**

The court referred Alpha's motion to transfer venue to a magistrate judge for a determination under 28 U.S.C § 636(b)(1)(A). Docket 21. "The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court must affirm the magistrate judge's order unless "it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to

support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r*, 79 F.3d 726, 728 (8th Cir. 1996) (quoting *Chase v. Comm'r*, 926 F.2d 737, 740 (8th Cir. 1991)). "A decision is 'contrary to law' when it fails to apply (or misapplies) relevant statutes, case law, or rules of procedure." *United States v. Red Bird*, 2020 WL 6129634, at *4 (D.S.D. Oct. 19, 2020) (quoting *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1043 (D. Minn. 2010)).

### B.   Alpha's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) was Appropriate.

The magistrate judge found that the motion to transfer was improperly brought under 28 U.S.C. § 1404(a) because South Dakota is not a proper venue for this action. Alpha argues that this case should be transferred to the District of Colorado under 28 U.S.C § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  To transfer venue under 28 U.S.C. § 1404(a), venue must have been proper in the District of South Dakota, where the civil action was initially brought. *Id*; *see also Turner v. Werner Enters., Inc.*, 2009 WL 2358348, at *1 (D. Neb. July 23, 2009) (citing *Eggleton v. Plasser & Theurer Export Van Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588 n.3 (8th Cir. 2007)).

Where the initial venue is improper, a party must invoke § 1406(a) for a venue transfer. *See Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964) ("[§] 1406(a) provides for transfer from forums in which venue is wrongly or

5

improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."). Thus, for venue transfer under §1404(a) to be appropriate, venue in the District of South Dakota must have been proper.

Whether venue is proper is governed by 28 U.S.C § 1391. Section 1391(b) provides that a civil action may be brought in-

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . ; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1391(c) defines residency of entities for venue purposes as:

[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]

28 U.S.C. § 1391(c)(2).

Because the events giving rise to the claim occurred in Colorado, § 1391(b)(2) is not applicable. The question then turns to whether Alpha is subject to personal jurisdiction in South Dakota. *See Dakota Provisions, LLC v. Hillshire Brands Company*, 226 F. Supp. 3d 945, 959 (D.S.D. 2016) ("[D]etermining whether the defendants are subject to personal jurisdiction in South Dakota also determines whether the motion to transfer venue would properly be brought under section 1404(a) or under section 1406(a)."). Here,

6

the magistrate judge concluded that it was doubtful that Alpha is subject to personal jurisdiction in South Dakota because Alpha is incorporated in Wisconsin and has its principal place of business in Texas. Docket 22 at 6-7.

Alpha did not, however, challenge personal jurisdiction in its Answer. Docket 11. By not challenging the court's personal jurisdiction, Alpha has waived that argument, thus consenting to personal jurisdiction in South Dakota.[2] Fed. R. Civ. P. 12(h)(1). "And because the defendant[] [has] consented to personal jurisdiction in South Dakota, [it has] also consented to venue in South Dakota as [it is] 'subject to the court's personal jurisdiction with respect to the civil action in question[.]' " *Dakota Provisions*, 226 F. Supp. 3d at 960 (quoting 28 U.S.C § 1391(c)(2)). Thus, Alpha "resides" in South Dakota and is properly subject to venue in South Dakota under 28 U.S.C § 1391(b)(1). The court reverses the part of the magistrate judge's order that found venue to be improper in the District of South Dakota and that Alpha's motion to transfer venue should have been brought under 28 U.S.C. § 1406, because it is clearly erroneous and contrary to law. Venue is proper in the District of South Dakota and Alpha's motion to transfer venue under 28 U.S.C. § 1404(a) is proper.

---

[2] Burgard objected to the magistrate judge's finding that there was no personal jurisdiction because Alpha is not registered to do business in South Dakota. Docket 23 at 1. But because Alpha consented to personal jurisdiction, the court need not consider whether Alpha is registered to do business in South Dakota.

### C. The Magistrate Judge's Order Granting Transfer of Venue is Not Clearly Erroneous or Contrary to Law

Burgard next challenges the magistrate judge's § 1404(a) analysis.[3] As stated above, § 1404(a) transfer motions require a court to consider "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). The Supreme Court has also explained that "[a] motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see also Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) ("[C]ourts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."); 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3847 (4th ed. 2022) ("[C]ourts. . . have recognized that each case must turn on its particular facts, and the trial court must consider and balance all the relevant factors to determine whether the litigation would proceed more conveniently and whether the interests of justice would be better served by transfer to a different forum." (footnote omitted)). In *Terra International*, the Eighth Circuit endorsed additional factors. *Terra Int'l, Inc.*, 119 F.3d at 696. The "balance of convenience" category includes:

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and

---

[3] Despite concluding that the motion to transfer venue should have been brought under § 1406, the magistrate judge also analyzed transfer under § 1404(a) "to provide a complete record for any reviewing court[.]" Docket 22 at 9.

8

>   documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Id.* The "interests of justice" category includes:

>   (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Id.* "Because the 'interests of justice' and 'balance of convenience' factors overlap, the court will address the factors in a combined analysis." *Dakota Hotel Ventures, LLC v. David Baumann-Architect, Ltd.*, 2016 WL 845316, at *2 (D.S.D. Mar. 2, 2016).

Burgard does not dispute that the magistrate judge considered the appropriate factors; instead, he disputes the magistrate judge's reasoning regarding the judicial economy, location of witnesses, plaintiff's forum choice, and conflict of law factors. Docket 23 at 1-5. Burgard does not dispute the magistrate judge's conclusions that the comparative costs to the parties of litigating in each forum and each party's ability to enforce a judgment are neutral considerations.

  **1. Judicial Economy**

Burgard argues that the judicial economy factor favors transfer. Docket 23 at 2. The magistrate judge found that judicial economy favored transfer to the District of Colorado because "[t]hat court is already familiar with the underlying facts," referring to the underlying case previously litigated in Colorado. Docket 22 at 10. Additionally, the magistrate judge noted that "this

case is in its nascent stages in this district with no discovery, scheduling or substantive motions practice having taken place." *Id.* Considering neither the court nor the parties "have invested substantial time and resources into this case" yet, the magistrate judge found that judicial economy militated in favor of transfer. *Id.* at 11.

Burgard, however, contends "the Magistrate fail[ed] to consider the fact that this lawsuit centers around whether insurance coverage exists in the face of a claimed exclusion." Docket 23 at 2. Burgard maintains that "[t]he threshold issue in this case is the interpretation of the insurance policy." *Id.* In Burgard's view, "[f]amiliarity with the underlying facts is of minimal importance to the questions before the [c]ourt." *Id.*

Although judicial economy typically relates to docket congestion and time of disposition in the two forums, "[s]everal courts have noted that judicial economy also supports the transfer of cases to a court that has dealt with the same major issues in other cases." Wright & Miller, *supra*, § 3854. Here, the magistrate judge appropriately weighed the larger view of this litigation. The District of Colorado's familiarity with the underlying facts makes that court better situated to address the issues in this lawsuit. Thus, the court concludes that the magistrate judge's analysis of judicial economy is not clearly erroneous or contrary to law.

###     2.    Location of Witnesses

Burgard also contends that the magistrate judge erred in concluding that the location of witnesses favors transfer. Docket 23 at 3-4. "To determine the

convenience of witnesses, the Court must examine the materiality and importance of the anticipated witness' testimony and then determine their accessibility and convenience to the forum." *R.D. Offutt Co. v. Lexington Ins. Co.*, 342 F. Supp. 2d 838, 842 (D.N.D. 2004) (citing *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991)).

Burgard relies upon *R.D. Offutt*, in which a venue transfer also turned upon the interpretation of an insurance policy. Docket 23 at 4; *R.D. Offutt Co.*, 342 F. Supp. 2d at 842. In that case, the District of North Dakota denied the motion to transfer to Oregon, the location of the underlying events. *Id.* at 840. In finding that convenience of witnesses did not favor transfer, the District of North Dakota reasoned, "the Court can presume that testimony of fact witnesses will not . . . be critical to the initial determination of coverage." *Id.*

But *R.D. Offutt* and the case at bar are distinguishable. As the magistrate judge here noted, the insurance policy in *R.D. Offutt* "was negotiated in North Dakota, issued in North Dakota, was governed by North Dakota law, premiums were paid from North Dakota, and the defendant was governed by the North Dakota department of insurance." Docket 22 at 17 (citing *R.D. Offutt Co.*, 342 F. Supp. 2d at 841-45). Consequently, witnesses relating to the insurance policy were located in or around North Dakota. Here, as Alpha notes, "[t]he policy at issue was a Colorado auto policy, issued to a Colorado company, by an insurance company authorized to do business in Colorado, through a Colorado insurance agency." Docket 14 at 1. Also, the underlying lawsuit was litigated and settled in Colorado. *Id.*

In finding that the location of witnesses favored transfer to Colorado, the magistrate judge correctly noted that several witnesses are located in Alabama, Texas, Illinois, and Clinton, Iowa, none of whom are within 100 miles of either Rapid City, South Dakota (the present venue), or Denver, Colorado (Alpha's proposed venue). Docket 22 at 13. Thus, the court's ability to subpoena these witnesses is a neutral consideration. Without having witness lists, the magistrate judge then identified additional possible material witnesses relating to the policy and analyzed their accessibility and convenience to the forum. *Id.* TP Enterprises—the party who bought the Alpha policy—and the insurance agent who sold TP Enterprises the Alpha policy are both located in Colorado. *Id.* The possible need for evidence from TP Enterprises or the Colorado agent who sold the policy favors transfer. Any examination of the actual forklift in question favors transfer. United Rentals, the company that leased the forklift, is located in Colorado and thus this too favors transfer. Thus, the court finds the magistrate judge's determination that the location of witnesses favors transfer is neither clearly erroneous nor contrary to law.

### 3. Plaintiffs' Choice of Forum

Burgard next challenges the magistrate judge's analysis regarding plaintiffs' choice of forum. The magistrate judge gave Burgard's choice of forum "less weight. . . than would ordinarily be the case because the presumption that plaintiff has chosen a convenient forum is not supported by the record." Docket 22 at 12. In support, the magistrate judge noted that "South Dakota is convenient for Mr. Burgard, but not the other plaintiff, TP Enterprises." *Id.* at

12

11. Additionally, the magistrate judge questioned Burgard's residence at the time of the accident. *See id.* ("[I]t appears as though Mr. Burgard may have been living in Colorado at the time of the events giving rise to his injury."). The magistrate judge explained, "[i]f that is true, South Dakota's main point of contact with this litigation is simply the fact that plaintiff's lawyers are located here and one plaintiff, Mr. Burgard, has relocated to South Dakota." *Id.*

Burgard first objects to the magistrate judge's consideration of the location of TP Enterprises. Docket 23 at 3. Burgard argues "the Magistrate heavily relied on the fact that TP Enterprises is a company from Colorado and therefore South Dakota would not be convenient for them." *Id.* Burgard maintains this "heavy reliance" was improper because TP Enterprises assigned its rights to Burgard. *See* Docket 24-3. Consequently, "TP Enterprises has absolutely no participation, influence, or interest in the outcome of this lawsuit." Docket 23 at 3. Next, Burgard argues "[t]he Magistrate incorrectly claims that Mr. Burgard lived in Colorado and subsequently moved to South Dakota[.]" *Id.* at 1. As a result, Burgard contends "[t]he Magistrate has relied on incorrect facts to give this factor less deference." *Id.* at 3.

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l Inc.*, 119 F.3d at 695. "This 'general' practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (citing *Piper Aircraft Co. v.*

13

*Reyno*, 454 U.S. 235, 255-56 (1981)). Courts have afforded less deference to the plaintiff's chosen forum when "the transaction or underlying facts did not occur in the chosen forum[.]" *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999); *see also Federated Cap. Corp. v. Nevada C.K. Inc.*, 2010 WL 1704400, at *2 (E.D. Mo. Apr. 28, 2010) ("The plaintiff's choice of forum is also accorded less weight where the operative events giving rise to the lawsuit took place in another forum.") (citing *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.*, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003)); *MDA Holding Co., LLC v. Hartford Steam Boiler Inspection & Ins. Co.*, 2008 WL 11510726, at *2-3 (D. Minn. June 11, 2008) ("Plaintiffs' choice is owed little deference here because the underlying events did not occur in Minnesota.").

The assignment of TP Enterprises' rights to Burgard and the additional information that Burgard was a South Dakota resident at the time of the accident do not change the ultimate conclusion reached by the magistrate judge. Weighing the facts that the underlying events occurred in Colorado and the underlying lawsuit took place in Colorado against the sole fact that Burgard lives in South Dakota, it was not clearly erroneous or contrary to law for the magistrate judge to give Burgard's forum choice less deference.

### 4. Advantage of Local Court Determining Questions of Local Law

Lastly, Burgard disagrees with Magistrate Judge Duffy's conclusion that because Colorado law would apply to all claims, it would be preferable to have a Colorado court decide the issues.[4] *See* Docket 23 at 4. Burgard contends "the Magistrate failed to consider that South Dakota and Colorado employ the same principles of contract interpretation." *Id.*

But Burgard is bringing more than just a breach of contract claim. He also alleges breach of fiduciary duty, unfair trade practices, and intentional infliction of emotional distress. Docket 4 at 8-10. And Burgard is seeking punitive damages under a Colorado statute. Docket 4 ¶ 50. It is a well-settled principle that a local court should determine local issues of local law. *See Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home. There is an appropriateness. . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case[.]"). The magistrate judge summarized the number of issues and interests local to Colorado:

> The contract of insurance between TP Enterprises and Alpha was entered into in Colorado. The policy is governed by Colorado law. The accident occurred in Colorado. Alpha's denial of coverage was communicated in Colorado to its insured, TP Enterprises, who was also in Colorado. The lawsuit which Alpha allegedly refused in bad faith to defend or to pay to settle was pending in the District of Colorado. If Alpha engaged in unfair trade practices, those practices would be measured against Colorado's trade laws, not South Dakota's—Alpha engaged in no trade activities in South Dakota in connection with the events in this case. South Dakota

---

[4] No parties dispute that the claims in this case are governed by Colorado law. *See* Docket 22 at 14.

> law has no claim to application to any of the claims in this case, tort or contract, and both parties tacitly acknowledge this.

Docket 22 at 15. *See also R.D. Offutt Co.*, 342 F. Supp. 2d at 844-45 (denying transfer to Oregon after weighing relevant state contacts). Given the number of local interests and issues, the court finds that it was not clearly erroneous or contrary to law for the magistrate judge to determine that the District of Colorado is better suited for this case.

## CONCLUSION

Because the magistrate judge's order regarding transfer pursuant to § 1406 was based on the incorrect conclusion that venue was improper in the District of South Dakota, that portion of the magistrate judge's order is reversed. But the magistrate judge issued an alternative holding under § 1404(a), transferring this matter to the District of Colorado, which is affirmed. Thus, it is

ORDERED that the magistrate judge's order (Docket 22) granting Alpha's motion to transfer (Docket 13) is reversed in part and affirmed in part. This action is transferred to the District of Colorado.

Dated July 21, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

16